UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT ANNABEL,

              Plaintiff,                         No. 14-10244

v.                                    District Judge Arthur J. Tarnow
                                         Magistrate Judge R. Steven Whalen

JACK FROST, ET AL.,

              Defendants.

_____/

**REPORT AND RECOMMENDATION**

On January 17, 2014, Plaintiff Robert Annabel, a prison inmate in the custody of the Michigan Department of Corrections ("MDOC"), filed a *pro se* civil complaint under 42 U.S.C. § 1983 [Doc. #1]. Defendants Campbell, Eaton, Frost, Kindinger, and McConnell filed a motion for summary judgment [Doc. #15] on March 27, 2014. Plaintiff filed a motion for leave to amend his complaint, along with a proposed amended complaint, on April 8, 2014 [Doc. #17 and #18]. On June 23, 2014, I granted leave to amend, ruling that the amended complaint [Doc. #18] "shall be the operative complaint in this case."

On June 27, 2014, Defendants Campbell, Eaton, Frost, Kindinger, and McConnell filed a motion for summary judgment as to Plaintiff's amended complaint [Doc. #28], incorporating argument and exhibits from their prior motion. Both motions have been referred for Reports and Recommendations pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons discussed below, I recommend that the motion for summary judgment [Doc. #28] be GRANTED. I further recommend that the motion for summary judgment as to the original complaint [Doc. #15] be DENIED AS MOOT.

-1-

## I.   FACTS

Plaintiff makes the following allegations in his amended complaint [Doc. #18]. At the time of the alleged incidents giving rise to his complaint, he was incarcerated at the Gus Harrison Correctional Facility. On July 1, 2013, he asked Assistant Resident Unit Manager Steven Kindinger to post a sign-up sheet for inmates seeking to obtain a position as unit representative to the Warden's Forum.  Kindinger told him, "I don't want you as block rep." *Amended Complaint*, ¶ IV-1. Because Kindinger had still not posted a sign-up sheet by July 12, 2013, Plaintiff filed a grievance on July 17, 2013. *Id*. ¶ IV-3. Defendants Eaton and Campbell rejected the grievance, and notified Defencants Kindinger and Frost, a Corrections Officer, that Plaintiff had written a grievance and should be disqualified from a unit representative position. *Id*. ¶ IV-4-5.

Plaintiff alleges that on July 22, 2013, he opened the tray slot in prisoner McQuitter's cell and delivered a folded t-shirt to McQuitter. *Id*. ¶ IV-8. Defendant Frost then walked toward Plaintiff and said, "You're in trouble, go lock up." *Id*. ¶ IV-9. Frost wrote a Class II misconduct ticket against Plaintiff for disobeying a direct order. *Id*. ¶ 10. Plaintiff alleges that "Frost would not have written a Class II misconduct for disobeying a direct order if Plaintiff hadn't pressed the issue about a unit representative position with his superiors and then filed a grievance." *Id*. ¶ IV-12.

At the misconduct hearing on August 4, 2013, Plaintiff admitted to opening McQuitter's tray slot, but denied that Frost had ever given him a direct order to not pass items to another prisoner. Plaintiff states that Captain McConnell, who conducted the hearing, "falsely claimed in a hearings report that Plaintiff admitted disobeying a direct order." *Id*. ¶¶ IV-17-20.  He also alleges that in his August 6, 2013 hearings report, McConnell "acknowledged that Plaintiff said the incident could not have occurred at

1620 hours., as stated on the misconduct report and changed the time to 'approximately 1830 hours'...." *Id*. ¶ IV-20. Following the misconduct report, Plaintiff, who had won election as unit representative, was removed from that position. *Id*. ¶¶ IV-19,21.

Plaintiff brings the following claims:

(1) That all Defendants retaliated against him, in violation of his First Amendment right to file a grievance and "for his exercise of the right to freedom of speech on behalf of himself and other prisoners."

(2) That Defendant Frost violated substantive due process by issuing a false misconduct charge.

(3) That Defendant McConnell violated procedural due process at the misconduct hearing.

(4) That Defendant Campbell violated due process by upholding McConnell's "false and unsupported findings."

## II.   STANDARD OF REVIEW

### A.   Rule 12(b)(6)

Fed.R.Civ.P. 12(b)(6) provides for dismissal of a complaint "for failure of the pleading to state a claim upon which relief can be granted."  Rule 12(b) also provides that if, on consideration of a motion under paragraph (6), "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 (summary judgment)."  In assessing a Rule 12(b)(6) motion, the court accepts the plaintiff's factual allegations as true, and asks whether, as a matter of law, the plaintiff is entitled to legal relief.  *Rippy v. Hattaway,* 270 F.3d 416, 419 (6th Cir. 2001).

The United States Supreme Court has modified the standard for determining

-3-

whether a complaint is subject to dismissal under Fed.R.Civ.P. 12(b)(6).  In *Bell Atlantic Corp. v. Twombley*, 550 U.S 544 (2007), the Court,  construing the requirements of Fed.R.Civ.P. 8(a)(2), held that although a complaint need not contain detailed factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level...on the assumption that all the allegations in the complaint are true." *Id.*, 550 U.S. at 555-56 (internal citations and quotation marks omitted). Further, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.* (Internal citations and quotation marks omitted). *See also Association of Cleveland Fire Fighters v. City of Cleveland, Ohio* 502 F.3d 545, 548 (6th Cir. 2007). Stated differently, a complaint must "state a claim to relief that is plausible on its face." *Twombley*, at 1974.

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Court explained and expanded on what it termed the "two-pronged approach" of *Twombley*. First, it must be determined whether a complaint contains factual allegations, as opposed to legal conclusions. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  556 U.S. at 678, citing *Twombley*, 550 U.S. at 555.  Second, the facts that are pled must show a "plausible" claim for relief, which the Court described as follows:

> "Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'shown[n]'–'that the pleader is entitled to relief.'" 556 U.S. at 679 (internal citations omitted).

-4-

## B.    Summary Judgment

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c).  To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990). Drawing all reasonable inferences in favor of the non-moving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celetox Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate.  *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

Once the moving party in a summary judgment motion identifies portions of the record which demonstrate the absence of a genuine dispute over material facts, the opposing party may not then "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact," but must make an affirmative evidentiary showing to defeat the motion.  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). The non-moving party must identify specific facts in affidavits, depositions or other

factual material showing "evidence on which the jury could *reasonably* find for the plaintiff." *Anderson*, 477 U.S. at 252 (emphasis added). If the non-moving party cannot meet that burden, summary judgment is clearly proper. *Celotex Corp.*, 477 U.S. at 322-23.

## III.    DISCUSSION

The Defendants have styled their motion as one for summary judgment under Fed.R.Civ.P. 56(a). However, based on their assertion of qualified immunity, they filed a motion to stay discovery [Doc. #24], arguing as follows:

> "[W]hen the defense of immunity is asserted, until this Court rules on Defendants' dispositive motion and determines whether Plaintiff has a viable legal theory upon which to proceed, Defendants should be relieved of the time undue burden, and expense involved in responding to interrogatories, admission requests, document requests, depositions, and other time-consuming discovery procedures. *Siegert v. Gilley*, 500 U.S. 226, 232 (1991)" *Motion*, at 2.

The Court granted a stay of discovery [Doc. #25].

Qualified immunity is an affirmative defense. A state official is protected by qualified immunity unless the Plaintiff shows (1) that the Defendant violated a constitutional right, and (2) the right was clearly established to the extent that a reasonable person in the Defendant's position would know that the conduct complained of was unlawful. *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). Under *Saucier*, the inquiry was sequential, requiring the district court to first consider whether there was a constitutional violation. However, in *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009), the Supreme Court held that the two-step sequential analysis set forth in *Saucier* is no longer mandatory. Rather, *Pearson* commended the order of inquiry to the judge's discretion, to be exercised on a case-by-case basis.

In this case, as discussed below, Defendants are correct that the Plaintiff has failed to put forth a "viable legal theory." A Rule 12(b)(6) analysis shows that even accepting Plaintiff's allegations as true, his complaint fails to allege a plausible constitutional violation, and as such, these Defendants are entitled to qualified immunity.

### A.    Retaliation

In *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999), the Sixth Circuit held that a retaliation claim has three elements: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two–that is, the adverse action was motivated at least in part by the plaintiff's protected conduct."

The Plaintiff claims that the Defendants retaliated against him for filing a grievance. The first prong of *Thaddeus-X* has been met, since filing a grievance challenging conditions of confinement is protected by the First Amendment. *Bounds v. Smith*, 430 U.S. 817, 828, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977).  However, this claim falters on the second prong.

As to the second prong, the adverse action Plaintiff claims is the Class II misconduct ticket. Attached to Defendants' original motion for summary judgment [Doc. #15] as Exhibit A is MDOC Policy Directive 03.03.105, which sets forth the permissible sanctions for a Class II misconduct at Attachment D. Those sanctions are limited to toplock (confinement to quarters) not to exceed five days; loss of privileges, not to exceed 15 days; assignment of extra duty, not to exceed 20 hours; and counseling and reprimand. An inmate does not lose disciplinary credits as the result of a Class II conviction. The Plaintiff was not placed in administrative segregation, nor was he transferred to another

unit or facility with harsher conditions. Loss of privileges, a short period in toplock, and extra duty are *de minimis* sanctions that would not deter a person of ordinary firmness from pursuing a grievance or other First Amendment protected activity. *See Ingram v. Jewell*, 94 Fed. Appx. 271, 273 (6th Cir.2004) ( *citing Thaddeus–X,* 175 F.3d at 396–97)(14 days loss of privileges does not constitute an adverse action); *see also Naturalite v. Forner*, 2012 WL 1020031, *7 (E.D. Mich. 2012); *Patterson v. Godward*, 2012 WL 652470, *4 (W.D. Mich. 2012).  Nor, under the Policy Directive, was Plaintiff subject to the *risk* of an adverse action. *Compare Brown v. Crowley*, 312 F.3d 782, 789 (6th Cir. 2002)(plaintiff faced a risk of significant sanctions, including punitive segregation and loss of disciplinary credits when he was charged with a major misconduct).

To the extent that the Plaintiff alleges that his inability  to serve as a unit representative to the Warden's Forum is an adverse action, he fares no better, because service on a Warden's Forum is not protected conduct. *See Miller v. Berghuis*, 2013 WL 8445625 *2 (W.D. Mich. 2013); *Reeves v. Chapman*, 2011 WL 2518843, *2 (E.D. Mich. 2011); *see also VanDiver v. Martin*, 48 Fed.App'x 517, *2 (6th Cir. 2002)(inmate "has no liberty or property interest in his position...on the warden's forum," and "no First Amendment right to represent other inmates in presenting their grievances"); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989)(no constitutionally protected interest in being an inmate advisor); *Green v. Waldren*, 221 F.3d 1334, *1 (6th Cir. 2000)(Table)(inmate "had no constitutional right to hold the position of block or prisoner representative.").

Because Plaintiff's retaliation claim fails at the second and (in the case of the Warden's Forum) first prong of *Thaddeus-X*, it is not necessary to address the third prong–causation.  However, I note that under the facts of this case, the claim would also

fail the causation test because (1) Plaintiff was found guilty of the misconduct, and (2) he has pled no facts that would plausibly show that notwithstanding the finding of guilt, the Defendants' motivation was retaliatory, or that the Plaintiff had no opportunity to defend himself.

In 16 unpublished opinions, the Sixth Circuit has held that a "finding of guilt based upon some evidence of a violation of prison rules 'essentially checkmates [a] retaliation claim.'" *Burton v. Rowley*, 234 F.3d 1267, *2 (6th Cir. 2000)(Table)(quoting *Henderson v. Baird*, 29 F.3d 464, 469 (8th Cir. 1994); *see also Patterson v. Godward*, 505 Fed.App'x 424 (6th Cir. 2012); *Jackson v. Madery*, 158 Fed.App'x 656, *5 (6th Cir. 2005); *Clemons v. Cook*, 52 Fed.App'x 762, *2 (6th Cir. 2002); *Lewis v. Randle*, 66 Fed.App'x 560, *1 (6th Cir. 2003); *Ruiz v. Bouchard*, 60 Fed.App'x 572 (6th Cir. 2003); *Clemons v. Cook*, 52 Fed.App'x 762 (6th Cir. 2002); *Lewis v. Turner*, 16 Fed.App'x 302 (6th Cir. 2001); *McKinley v. Bowlen*, 8 Fed.App'x 488 (6th Cir. 2001); *Wilson v. Wellman*, 238 F.3d 426 (6th Cir. 2000)(Table); *Robinson v. Shewalter*, 238 F.3d 423 (6th Cir. 2000)(Table); *Owens v. Johnson*, 221 F.3d 1335 (6th Cir. 2000); *Knuckles-El v. Bengtson*, 202 F.3d 267 (6th Cir. 1999)(Table); *Mujihad v. Harrison*, 172 F.3d 49 (6th Cir. 1998)(Table); *Harris-Debardelaben v. Johnson*, 121 F.3d 708 (6th Cir. 1997); *Murray v. U.S. Bureau of Prisons*, 105 F.3d 401 (6th Cir. 1997)(Table).

Plaintiff points out that notwithstanding this plethora of non-binding unpublished decisions, his complaint finds refuge in a *published* Sixth Circuit opinion, *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007).  In *Thomas*, the plaintiff-inmate claimed that the major misconduct charge of which he was convicted was retaliatory. The district court dismissed the case *sua sponte*, before service of the complaint. Rejecting the MDOC's reliance on *Henderson v. Baird*, "as well as a bevy of...unpublished opinions relying" on

-9-

*Henderson*, the Sixth Circuit observed that each of those unpublished cases "was decided on summary judgment, and therefore, each is distinguishable from the present case, which the district court dismissed sua sponte before service of the complaint on the sole defendant, Eby." *Id*. at 442. *Thomas* reasoned that "it makes little sense" to apply the summary judgment standard of *Mount Healthy City School District Board of Education v. Doyle*, 429 U.S. 274 (1977)[1] at the pleading stage, on a motion to dismiss. *Thomas* at 442. The Court explained:

> "A complaint cannot be dismissed unless 'the plaintiff can prove *no set of facts*' that would entitle him to relief. Here, Thomas could establish multiple sets of facts that would prove his § 1983 claim. For example, it is possible that after discovery, Thomas would be able to demonstrate that inmates regularly expose their genitals to guards without consequence. Or perhaps he could prove that he had exposed himself to Eby in the past, but she had never pursued disciplinary action until after he filed a grievance against another guard. In either of these cases, Thomas would be able to show that his filing a grievance was 'a motivating factor' behind the misconduct ticket. And Eby likely would be unable to meet her burden to 'show that [s]he would have taken the same action in the absence of the protected activity.' While it may be unlikely that Thomas could prove such facts, the district court cannot dismiss a pro se prisoner's pleading merely 'because the court finds the plaintiff's allegations unlikely.'" (Internal citations omitted)(emphasis in original). *Id.*

The problem with *Thomas* is that it pre-dates *Bell Atlantic Corp. v. Twombley*, where the Supreme Court abrogated the "no set of facts" pleading standard attributed to *Conley v. Gibson*, 355 U.S. 41 (1957). *Twombley* stated that "[t]he phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombley*, at 563. Under the *Twombley-Iqbal*

---

[1] *Mount Healthy* set forth a burden-shifting framework in which after a plaintiff showed that his or her protected conduct was a motivating factor in the defendant's action, the burden shifted to the defendant to show that it would have taken the same action even in the absence of the protected activity.

plausibility standard, it is not sufficient, as *Thomas* held, that there might be some hypothetical basis for a retaliation claim, and if we equate the word "implausible" for "unlikely," it is no longer the law that a court cannot dismiss a *pro se* pleading because it "finds the plaintiff's allegations unlikely." To the extent that *Thomas* holds that *Henderson v. Baird* and its unpublished Sixth Circuit progeny can never be applied at the pleading stage, it is no longer good law.

In *Wagner v. Randall*, 2014 WL 4843686 (E.D. Mich. 2014)(Tarnow, J.), the Court declined to apply the "checkmate" doctrine to the facts as presented in that case. *Wagner*, however, is distinguishable from the present case. *Wagner* came to the Court on a motion for summary judgment, and was thus decided on an evidentiary record, not just on the pleadings and not on a pre-discovery motion based on qualified immunity. The plaintiff in *Wagner* presented evidence, in the form of his own affidavit, showing that notwithstanding an administrative finding of guilt, the defendants had a retaliatory motive:

> "Plaintiff has provided evidence of retaliatory motive. In an affidavit, Plaintiff claims that roughly one week after he filed a grievance against Defendant Randall, Randall confronted Plaintiff and told him that because he liked to file 'bullshit grievances,' Randall and Defendant Howard would 'tag team [Plaintiff's] ass and make [his] life a living hell.' Two weeks after Randall allegedly made this threat, Howard issued an NOI alleging that Plaintiff had conducted business by telephone, in violation of prison policy. Plaintiff claims this NOI was falsified and retaliatory. Plaintiff supports this claim by pointing out that Howard issued another NOI the next day, accusing Plaintiff of misconduct for which he was ultimately acquitted. Plaintiff further contends that Randall convicted Plaintiff on the charges of conducting business by telephone for retaliatory reasons, supporting this claim by asserting that when he confronted Randall about the conviction, Randall replied, 'I told you we were going to tag team your ass.'
>
> "Additional evidence supports Plaintiff's claim that Howard later orchestrated his retaliatory transfer to a distant facility. Plaintiff claims in his affidavit that after he sent complaints about Howard to the warden, Howard confronted him over the complaints and threatened to have him

sent to 'polar bear country' if he wrote one more complaint about her. Plaintiff filed a grievance about Howard that same day. The grievance is attached as an exhibit to Plaintiff's brief [11], and though it does not report that Howard explicitly threatened to transfer Plaintiff, it reports Plaintiff's fear that transfer to a distant facility will be Howard's next retaliatory action. Roughly two months later, Plaintiff was transferred to a correctional facility in Michigan's upper peninsula." *Id*. at *3-4.

In the present case, the Plaintiff has not alleged any similar, non-speculative facts plausibly showing that Frost's issuing of the misconduct was in retaliation for filing a grievance or for Plaintiff's seeking to represent his unit at the Warden's Forum.

*Wagner* cited several other cases that survived dismissal or summary judgment notwithstanding plaintiffs' guilt on misconduct charges. *Id*. at *3. However, none of the circumstances in those cases is present here. Unlike *Moore v. Plaster*, 266 F.3d 928 (8th Cir. 2001), Plaintiff's conviction was supported by "some evidence," i.e. the testimony of Frost; unlike *Bond v. Horne*, 553 Fed.App'x 219 (3rd Cir. 2014), Plaintiff had the opportunity to appeal, and in fact did appeal his finding of guilt beyond the first level of review; and unlike *Gordon v. Benson*, 2014 WL 90433 (W.D. Mich. 2014), Plaintiff had the opportunity to defend himself, and did defend himself at the administrative hearing.

I share *Wagner's* concern that "uncritical application of the [checkmate] doctrine may encourage violations of prisoners' First Amendment rights," *Id*. at *3, and I do not suggest that a plaintiff will *always* lose the game if found guilty of a misconduct. But where there is a motion to dismiss or a pre-discovery qualified immunity issue, a defendant can properly call "checkmate" if the plaintiff's complaint does not contain plausible, factual allegations that he or she was the victim of retaliation notwithstanding a finding of guilt on a misconduct charge. In the present case, the Plaintiff's conclusory allegations of retaliation do not meet the *Iqbal* standard. His claim, set forth in ¶ IV-12 of his amended complaint, is merely speculative, unadorned by any facts that would

-12-

plausibly show that the Defendants were influenced by a retaliatory motive:

> "Frost would not have written a Class II misconduct for disobeying a direct order if Plaintiff hadn't pressed the issue about a unit representative position with his superiors and then filed a grievance." *Id*. ¶ IV-12.

The Plaintiff having failed to properly plead a constitutional violation, the Defendants are entitled to qualified immunity. Checkmate.

## B.    Procedural Due Process

Plaintiff brings procedural due process claims against Defendant McConnell, the hearings officer, and Defendant Campbell, who on appeal upheld the administrative finding of guilt.

"Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris,* 503 F.3d 514, 519 (6th Cir.2007) (citing *Bd. of Regents of State Colleges v. Roth,* 408 U.S. 564, 579 (1972)). A prison inmate has a liberty interest in disciplinary proceedings if he or she faces a sanction that imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner,* 515 U.S. 472, 486 (1995). In *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Court prescribed procedural due process protections in disciplinary hearings where inmates faced a loss of good time or disciplinary credits that would result in an increase in the time served.  *See also Superintendent, Massachusetts Correctional Institution, Walpole v. Hill*, 472 U.S. 445, 453 (1985)(noting that the Court in *Wolff* "held that due process requires procedural protections before a prison inmate can be deprived of a protected liberty interest in good time credits."). As discussed above, the sanctions that flow from a Class II misconduct do not constitute "atypical and significant hardships" on the inmate. *See Staffney v. Allen,* 1999 WL 617967, at *2 (6th Cir. 1999) ("Staffney suffered no loss of good time credits as a result

of his minor misconduct conviction and the sanctions he received do not represent a liberty interest recognized by the constitution"); *Green v. Waldren,* 221 F.3d 1334, at *2 (6th Cir. 2000)(Table)(brief sentence of "toplock" does not amount to an atypical or significant hardship, and plaintiff "did not allege that he lost any good-time or disciplinary credits"). Because the Plaintiff did not have a protected interest, his procedural due process claims must be dismissed.

### C.    Substantive Due Process

Plaintiff claims that Defendant Frost committed a substantive due process violation by issuing a false misconduct ticket and lying at the hearing. "A plaintiff asserting a substantive due process claim faces a virtually insurmountable uphill struggle. He must show that the government conduct in question was so reprehensible as to 'shock the conscience' of the court." *Rimmer–Bey v. Brown,* 62 F.3d 789, 791 n. 4 (6th Cir.1995) (citing *Rochin v. California,* 342 U.S. 165 (1952)); *Mertik v. Blalock,* 983 F.2d 1353, 1367–68 (6th Cir.1993). Again, the *de minimis* sanctions flowing from a Class II misconduct do not amount to "atypical and significant hardships" under *Sandin v. Conner*, and therefore cannot reach a level that would shock the conscience.

In addition, "in reviewing [Plaintiff's] due process claim this court must accept the hearing officer's assessment of the credibility of witnesses and may not make its own assessment or re-weigh the evidence." *Davis v. Haviland* 2014 WL 794327, *9 (E.D.Cal. 2014)(citing *Hill*, 472 U.S. at 455).[2]

Plaintiff's substantive due process claim must therefore be dismissed.

---

[2] *Hill* held that judicial review of due process claims arising out of prison disciplinary hearings "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." 472 U.S. at 455.

-14-

### D.    Exhaustion

Defendants argue that Plaintiff failed to exhaust his administrative remedies before filing suit, as required by 42 U.S.C. § 1997e(a). However, because this complaint is dismissible on the merits, the Court need not consider the exhaustion question. *See* 42 U.S.C. § 1997e(c)(2).

### IV.    CONCLUSION

Because Plaintiff has not suffered a violation of a constitutionally protected right, the Defendants are entitled to qualified immunity. Therefore, I recommend that Defendants' motion for summary judgment [Doc. #28] be GRANTED.  I further recommend that the motion for summary judgment as to the original complaint [Doc. #15] be DENIED AS MOOT.

Any objections to this  Report and Recommendation must be filed  within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir.  1991); *United States v. Walters,* 638 F.2d 947 (6th Cir.  1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections,

the opposing party may file a response.  The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: February 17, 2015

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on February 17, 2015, electronically and/or by U.S. mail.

s/Carolyn M. Ciesla
Case Manager