UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT ANNABEL,                                Case No. 14-10244

        Plaintiff,                          SENIOR U.S. DISTRICT JUDGE
v.                                             ARTHUR J. TARNOW

JACK FROST, ET AL.,                            U.S. MAGISTRATE JUDGE
                                               R. STEVEN WHALEN

        Defendants.
_____/

**ORDER: (1) ADOPTING IN PART REPORT AND RECOMMENDATION [107]; (2) OVERRULING PLAINTIFF'S OBJECTIONS TO REPORT AND RECOMMENDATION [114]; (3) DENYING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION [69]; (4) DENYING PLAINTIFF'S MOTION FOR DISTRICT JUDGE TO ISSUE DIRECTIVE ORDER TO MAGISTRATE JUDGE [91]**

On December 1, 2016, Plaintiff Robert Annabel filed a Motion for Temporary Restraining Order ("TRO") [Dkt. #69].[1] On July 25, 2017, the Magistrate Judge filed a Report and Recommendation ("R&R") [107], recommending that the Court deny Plaintiff's Motion. On August 9, 2017, Plaintiff filed Objections [114] to the Magistrate Judge's R&R.

---

[1] Plaintiff has filed several motions for TRO and injunctive relief throughout this litigation. The first such motion was filed on October 22, 2015 [55] and will hereinafter be referred to as the "first" motion for TRO and preliminary injunction. The December 1, 2016 motion [69], which is the subject of this Order, will hereinafter be referred to as the "current" motion for TRO and preliminary injunction.

On March 16, 2017 Plaintiff filed a Motion for District Judge to Issue Directive Orders to Magistrate Judge [91].

For the reasons stated below, the July 25, 2017 R&R [107] is **ADOPTED in part**; Plaintiff's Objections to the R&R [114] are **OVERRULED**; Plaintiff's Motion for TRO and Preliminary Injunction [69] is **DENIED**; and Plaintiff's Motion for District Judge to Issue Directive Order to Magistrate Judge [91] is **DENIED**.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff filed a Complaint [1] on January 17, 2014 and an Amended Complaint [18] on April 8, 2014. In a previous R&R on this case [Dkt. #38], the Magistrate Judge summarized Plaintiff's allegations as follows:

> At the time of the alleged incidents giving rise to his complaint, [Plaintiff] was incarcerated at the Gus Harrison Correctional Facility. On July 1, 2013, he asked Assistant Resident Unit Manager Steven Kindinger to post a sign-up sheet for inmates seeking to obtain a position as unit representative to the Warden's Forum. Kindinger told him, "I don't want you as block rep." Amended Complaint, ¶ IV-1. Because Kindinger had still not posted a sign-up sheet by July 12, 2013, Plaintiff filed a grievance on July 17, 2013. *Id.* ¶ IV-3. Defendants Eaton and Campbell rejected the grievance, and notified Defendants Kindinger and Frost, a Corrections Officer, that Plaintiff had written a grievance and should be disqualified from a unit representative position. *Id.* ¶ IV-4-5.
>
> Plaintiff alleges that on July 22, 2013, he opened the tray slot in prisoner McQuitter's cell and delivered a folded t-shirt to McQuitter. *Id.* ¶ IV-8. Defendant Frost then walked toward Plaintiff and said, "You're in trouble, go lock up." *Id.* ¶ IV-9. Frost wrote a Class II misconduct ticket against Plaintiff for disobeying a direct order. *Id.* ¶

10. Plaintiff alleges that "Frost would not have written a Class II misconduct for disobeying a direct order if Plaintiff hadn't pressed the issue about a unit representative position with his superiors and then filed a grievance." *Id.* ¶ IV-12.

At the misconduct hearing on August 4, 2013, Plaintiff admitted to opening McQuitter's tray slot, but denied that Frost had ever given him a direct order to not pass items to another prisoner. Plaintiff states that Captain McConnell, who conducted the hearing, "falsely claimed in a hearings report that Plaintiff admitted disobeying a direct order." *Id.* ¶¶ IV-17-20. He also alleges that in his August 6, 2013 hearings report, McConnell "acknowledged that Plaintiff said the incident could not have occurred at 1620 hours, as stated on the misconduct report and changed the time to 'approximately 1830 hours'...." *Id.* ¶ IV-20. Following the misconduct report, Plaintiff, who had won election as unit representative, was removed from that position. *Id.* ¶¶ IV-19, 21.

Plaintiff brings the following claims:

(1) That all Defendants retaliated against him, in violation of his First Amendment right to file a grievance and "for his exercise of the right to freedom of speech on behalf of himself and other prisoners."

(2) That Defendant Frost violated substantive due process by issuing a false misconduct charge.

(3) That Defendant McConnell violated procedural due process at the misconduct hearing.

(4) That Defendant Campbell violated due process by upholding McConnell's "false and unsupported findings."


[Dkt. #38 at 2-3].

Defendants moved for summary judgment on all claims [28]. In addition, on October 22, 2015, Plaintiff filed his first Motion for TRO and Preliminary

Injunction [55], in which he claimed infringement of his right to access the courts because he lacked a sufficient supply of legal paper on which to draft his pleadings.

On January 22, 2016 the Court entered an Order [59], which, among other things, adopted the Magistrate Judge's R&R; granted Defendants' Motion for Summary Judgment; and denied Plaintiff's first Motion for TRO and Preliminary Injunction.

On February 10, 2016, Plaintiff filed an Amended Notice of Appeal [61] on the Court's decision to grant summary judgment. On September 21, 2016, the Sixth Circuit reversed in part, vacating the Court's dismissal of the First Amendment retaliation claim, and affirming the dismissal of Plaintiff's procedural and substantive due process claims. *Annabel, II v. Frost*, No. 15-1518, (6th Cir. Sept. 21, 2016). The only claim remaining in this action is Plaintiff's First Amendment retaliation claim.

In Plaintiff's current Motion for TRO and Preliminary Injunction [69], he again claims interference with his constitutional right to access the courts. Plaintiff maintains that he has been denied meaningful use of the prison's law library. He further contends that officers at the Gus Harrison Correctional Facility withheld his legal mail, in violation of Michigan Department of Corrections ("MDOC") policies.

Plaintiff is now incarcerated at the Ionia Maximum Correctional Facility. On July 28, 2017, Plaintiff filed a Renewed Motion for TRO and Preliminary Injunction [110].[2] In his Renewed Motion [110], Plaintiff repeats the claims asserted in the current Motion [69] and maintains that he is still being denied his right to access the courts.

Plaintiff seeks an injunction against MDOC requiring that it "abide by all its written policies and procedures for prisoner access to the courts" and cease the "arbitrary blanket practice of seizing envelopes sent by the federal courts" and opening and reading legal mail prior to delivery. [69 at 11].

### STANDARD OF REVIEW

"A district court's standard of review for a magistrate judge's report and recommendation depends on whether a party files objections." *Erard v. Johnson*, 905 F. Supp. 2d 782, 789 (E.D. Mich. 2012) (noting that as to portions of the R&R to which no party has objected, the court is not required to undertake any review). The parts of the R&R to which specific objections are made will be reviewed by the Court *de novo.* 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b)(3).

"'[O]bjections disput[ing] the correctness of the magistrate's recommendation but fail[ing] to specify the findings . . . believed in error' are too general." *Novak v. Prison Health Services, Inc.*, No. 13-11065, 2014 WL 988942,

---

[2] Hereinafter, Plaintiff's Renewed Motion for TRO and Preliminary Injunction [110] will be referred to as "Renewed Motion."

at *3 (E.D. Mich. Mar. 13, 2014) (quoting *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995)).

## ANALYSIS

I. **REPORT & RECOMMENDATION [107]**

"A preliminary injunction is reserved for only the most egregious case, and should not be extended to cases which are doubtful or do not come within well-established principles of law." *Bonnell v. Lorenzo*, 241 F.3d 800, 826 (6th Cir. 2001). Plaintiff, as the moving party, has the "burden of proving that the circumstances clearly demand [an injunction]." *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002).

When evaluating a motion for preliminary injunction, the Court must consider four factors:

(1) Whether the movant has a strong likelihood of success on the merits;

(2) Whether the movant would suffer irreparable injury without the injunction;

(3) Whether issuance of the injunction would cause substantial harm to others; and

(4) Whether the public interest would be served by issuance of the injunction."

*Bonnell*, 241 F.3d at 809 (quoting *Rock & Roll Hall of Fame v. Gentile Prods*, 134 F.3d 749, 753 (6th Cir. 1998)).

Although no single factor is controlling of the outcome, if "there is simply no likelihood of success on the merits," that is usually "fatal." *Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000).

The Court agrees with the Magistrate Judge's conclusion that Plaintiff has not met his burden of showing entitlement to injunctive relief, but offers alternate reasoning to support the finding that Plaintiff has no likelihood of success on the merits.

In the R&R, the Magistrate Judge explains that because Plaintiff seeks a preliminary injunction against MDOC, which is a not a party to this lawsuit, Plaintiff has no likelihood of success on the merits. The R&R further reasons that even if Plaintiff's Motion were construed to apply to named Defendants, Plaintiff's request for injunctive relief would be rendered moot, since those individuals are employed at the Gus Harrison Correctional Facility and Plaintiff has since been transferred to the Ionia Maximum Correctional Facility. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996).

However, in Plaintiff's Renewed Motion [110], Plaintiff alleges that MDOC is still impeding his access to the courts, notwithstanding the transfer to Ionia. A prison transfer does not necessarily moot "an inmate's claim where the inmate

faces the potential for future harm." *Colvin v. Caruso*, 605 F. 3d 282, 295 (6th Cir. 2010) (declining to find Plaintiff's claim moot where his nonkosher status traveled with him to the new correctional facility). Accordingly, the Court declines to adopt the Magistrate Judge's finding that Plaintiff's claim is moot because of his transfer to Ionia.

Nevertheless, even if the Court were to overlook the technical deficiencies in Plaintiff's current Motion and interpret it as adequately setting forth a claim for denial of access to courts, the Court agrees with the R&R that Plaintiff is unlikely to succeed on the merits.

Plaintiff maintains that he is being denied meaningful use of the prison law library. However, "an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." *Lewis v. Casey*, 518 U.S. 343, 351 (1996).

Plaintiff has failed to demonstrate "that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." *Id.* As the Magistrate Judge notes to the contrary, "the docket entries in this case show that Plaintiff has actively and aggressively litigated in this action . . . . [belying] any claim that he . . . does not have adequate access to legal materials." [R&R at 5].

With respect to Plaintiff's claim regarding delivery of his legal mail, the Court recognizes that prison officials may open prisoners' legal mail pursuant to a uniform policy. *Sallier v. Brooks*, 343 F. 3d 868, 873 (6th Cir. 2003). The Court further notes the heightened concern with affording prison officials discretion to open inmates' legal mail. *Id.* at 874.

In his Affidavit [69], Plaintiff states that the Gus Harrison and Ionia correctional facilities have blanket practices of opening all legal mail outside of his presence. Although Plaintiff's assertions, if true, may constitute an unlawful practice on the part of MDOC, *see e.g.*, *Sallier*, 343 F.3d at 874; *Knop v. Johnson*, 977 F.2d 996, 1012 (6th Cir. 1992), Plaintiff has not met his substantial burden of showing the irreparable harm necessary for the relief requested. As the R&R points out, Plaintiff continues to actively litigate this action and has even succeeded in the Sixth Circuit, notwithstanding the alleged MDOC policy violation.

## II. PLAINTIFF'S OBJECTIONS [114]

**Objection 1:** "The Court of Appeals ruling is res judicata that Plaintiff has a likelihood of success on the merits." (Obj. at 1).

The Court reads Plaintiff's statement as an objection to the Magistrate Judge's finding that Plaintiff has no likelihood of success on the merits. Plaintiff seems to argue that the Sixth Circuit's decision vacating the dismissal of the First Amendment retaliation claim refutes the Magistrate Judge's finding that Plaintiff is

unlikely to succeed on the merits. The Sixth Circuit found that Plaintiff asserted sufficient facts to support a *plausible* First Amendment retaliation claim. *Annabel, II v. Frost*, No. 15-1518, at 5 (6th Cir. Sept. 21, 2016) (emphasis added). The Sixth Circuit did not hold that Plaintiff had a likelihood of success on the merits of that claim. Accordingly, Plaintiff's objection is overruled.

**Objection 2:** "That Plaintiff did not plead an access to the courts claim does not preclude an injunction." (Obj. at 2).

There is some merit to Plaintiff's assertion that his failure to allege an access to courts claim in his Amended Complaint does not, itself, preclude injunctive relief. "'[A] party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint.'" *Colvin*, 605 F.3d at 300 (quoting *Devose v. Herrington*, 42 F. 3d 470, 471 (8th Cir. 1994)) (noting that the purpose of a preliminary injunction is to protect the movant from being harmed in the way in which he was alleged to have been harmed in the complaint).

In the Amended Complaint, Plaintiff claims, "all defendants acted with the retaliatory intent and in concert to violate Plaintiff's First Amendment right to file grievance and for his exercise of the right to freedom of speech on behalf of himself and other prisoners." (Am. Compl. at 6). Even interpreting Plaintiff's First

Amendment retaliation claim to include the access to courts claim regarding library access and mail, Plaintiff still fails to meet his burden of showing irreparable harm in his ability to pursue this case. Thus, Plaintiff's objection is overruled.

**Objection 3:** "Third party M.D.O.C. has its interests adequately represented by a party with the same interests." (Obj. at 3).

Plaintiff seems to object to the Magistrate Judge's finding that because MDOC is not a party to this lawsuit, Plaintiff has no likelihood of success on the merits. The Court construes Plaintiff's objections liberally because he is a *pro se* litigant. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The failure to name MDOC as a party does not affect the Court's decision to deny Plaintiff the injunctive relief he seeks. Even construing the Motion to apply to the named Defendants, Plaintiff still fails to meet his burden. Therefore, Plaintiff's objection is overruled.

**Objection 4:** "That Plaintiff is able to do some litigation does not show that he is not suffering from interference or a probalistic harm." (Obj. at 3-4).

Plaintiff maintains that he has having difficulty finding and citing cases within the Sixth Circuit, but nonetheless concedes that "he is litigating aggressively." [114 at 4]. Plaintiff's concession supports, rather than refutes, the

Magistrate Judge's conclusion that Plaintiff has not suffered irreparable harm. Thus, the objection is overruled.

**Objection 5:** "Plaintiff does not seek to 'micro-manage' administrators and the relief does not involve deference to security concerns." (Obj. at 4-5).

The Court need not review "'objections disput[ing] the correctness of the magistrate's recommendation" that fail "to specify the findings . . . believed in error . . . .'" *Novak*, 2014 WL 988942, at *3 (quoting *Miller*, 50 F.3d at 380). Because Plaintiff sets forth generalized objections to the R&R on this issue, the Court finds Plaintiff's assertion "tantamount to complete failure to object." *Cole v. Yukins*, 7 F. Appx. 354, 356 (6th Cir. 2001).

### III. PLAINTIFF'S MOTION FOR DISTRICT JUDGE TO ISSUE DIRECTIVE ORDERS TO MAGISTRATE JUDGE [91]

On March 16, 2017, Plaintiff filed a Motion for District Judge to Issue Directive Orders to Magistrate Judge [91]. Defendants have not filed a response. Pursuant to Fed. R. Civ. P. 83(b), E.D. Mich. L.R. 83.22 and L.R. 72.1(b)(1), Plaintiff requests that the Court "issue directive orders to Magistrate Whalen to remedy undue delays in case management and to make findings as to allegations of misconduct by an attorney and against his clients." [91 at 1]. Plaintiff seems to be

asking the Court to issue a directive order requiring the Magistrate Judge to promptly decide several motions Plaintiff has filed.

Fed. R. Civ. P. 83(b) states, "[a] judge may regulate practice in any manner consistent with federal law . . . and the district's local rules." Eastern District Local Rule 72.1(b)(1) states, "a magistrate judge may perform any of the duties authorized above upon specific reference by a judge of the court or pursuant to a general order of the court . . . . [and] will conform to the general procedural rules of this court, the instructions of the district judge to whom the case is assigned, and the Plan for the Administration of the Magistrate Judge System." Moreover, Local Rule 83.22 sets forth procedures for attorney discipline.

Plaintiff requests that the Court "issue the proper directive orders to Magistrate Judge Whalen for remedy of delays in scheduling orders and resolving pending matters on the case docket," [91 at 2], but none of the rules to which Plaintiff cites offer any support for his demand.

"As a threshold matter, the Court – not any party – is responsible for managing its docket." *United States v. Montgomery*, No. 12-CR-20392, 2013 WL 12099394, at *3 (E.D. Mich. Feb. 13, 2013). "The court endeavors to adjudicate all matters . . . in a timely matter, as justice ordinarily requires and as the pending caseload allows." *Floyd v. Burt*, No. 06-CV-10357, 2007 WL 295028, at *1 (E.D. Mich. Jan. 29, 2007). Neither the Federal Rules of Civil Procedure nor the Eastern

District of Michigan's Local Rules designate a specific period of time within which the Court is required to issue orders on the motions on this docket. Accordingly, Plaintiff's Motion [91] is denied.

## CONCLUSION

For the reasons stated above,

**IS IT ORDERED** that the Report and Recommendation [107] is **ADOPTED in part**.

**IT IS FURTHER ORDERED** that Plaintiff's Objections [114] to the R&R are **OVERRULED.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction [69] is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for District Judge to Issue Directive Order to Magistrate Judge [91] is **DENIED**.

**SO ORDERED.**

Dated: September 20, 2017

s/Arthur J. Tarnow
Arthur J. Tarnow
Senior United States District Judge