UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT ANNABEL,

    Plaintiff,               No. 14-10244

v.                            District Judge Arthur J. Tarnow
                              Magistrate Judge R. Steven Whalen

JACK FROST, ET AL.,

    Defendants.
_____/

**OPINION AND ORDER**

On January 17, 2014, Plaintiff Robert Annabel, a prison inmate in the custody of the Michigan Department of Corrections ("MDOC"), filed a *pro se* civil complaint under 42 U.S.C. § 1983 [Doc. #1], asserting First Amendment retaliation and Due Process claims against Defendants Campbell, Eaton, Frost, Kindinger, and McConnell. Before the Court are his motion to compel discovery filed on January 3, 2017 [Doc. #73] and his motion to compel discovery filed on February 16, 2017 [Doc. #84]. For the reasons and under the terms discussed below, the motions are GRANTED IN PART AND DENIED IN PART.

**I.    GENERAL PRINCIPLES**

In *Watrobski v. FCA US, LLC*, 2017 WL 4073955, at *1 (E.D. Mich. 2017), Magistrate Judge Majzoub described the general principles of discovery under

Fed.R.Civ.P. 26:

> "The scope of discovery under the Federal Rules of Civil Procedure is traditionally quite broad. *Lewis v. ACB Bus. Servs.*, 135 F.3d 389, 402 (6th Cir. 1998). Parties may obtain discovery on any matter that is not privileged, is relevant to any party's claim or defense, and is proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). 'Relevant evidence' is 'evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.' Fed. R. Evid. 401. Information need not be admissible in evidence to be discoverable. Fed. R. Civ. P. 26(b)(1). But the scope of discovery is not unlimited. 'District courts have discretion to limit the scope of discovery where the information sought is overly broad or would prove unduly burdensome to produce.' *Surles ex rel. Johnson v. Greyhound Lines, Inc*., 474 F.3d 288, 305 (6th Cir. 2007)."

The Court's discretion is broad in determining the scope of discovery or whether a "discovery request is too broad and oppressive." *Surles*, at 305.

## II. DISCUSSION

The Plaintiff's various interrogatories, requests to admit ("RTA") and a document request, along with each Defendant's responses, are found as Exhibits to Defendants' response to each motion. *See* Doc. #78 (Response to Motion #73] and Doc. #86 (Response to Motion #84). The discovery requests at issue with respect to each Defendant are set forth and discussed below.

<u>Defendant Campbell</u>

<u>Motion #84</u>

Int. 22–answered.

Int. 23- Plaintiff requests locations of security cameras at the Gus Harrison Facility. This request is both irrelevant and non-discoverable because of institutional

security concerns. In general terms, this also runs counter to the proportionality standard of Rule 26(b).

RTA #8 and #9 ask Defendant to admit to the authenticity of Plaintiff's exhibits. Defendant correctly declines to admit or deny because he has no knowledge or independent ability to verify.

Motion #73

Int. 1 and 4-answered.

Int. 7 and Int. 8 request grievance identifiers for all grievances filed at Gus Harrison since July, 2010 with a certain rejection code at Step I, and grievances since July, 2010 that named Defendant. Defendant properly objected to this request as irrelevant and that the burden of production would outweigh the likely benefit. Defendant also notes that Step I grievances are only maintained at the institution for three years, and Step III grievances are only maintained in Lansing for six years. Furthermore, Defendant states that providing grievance material from other prisoners creates a security concern. I agree.

Int. #10 and Int. #11 requests the "ratio of rejections" of all grievances filed by Plaintiff at Gus Harrison for identified time frames. Defendants object as irrelevant and burdensome. The percentage of rejections of Plaintiff's other grievances is not relevant to the question of whether Plaintiff was retaliated against. He undoubtedly has a First Amendment right to file grievances, but the outcome of grievances unrelated to those at issue in this case is irrelevant to the question of whether he suffered retaliation by these

Defendants because of *filing* grievances, regardless of whether those grievances were upheld.

Int. #19 asks for all prisoner lawsuits in which Defendant was a named Defendant, or where he was not a named party, but was alleged to have participated with the named defendants. As phrased, this is overly broad. However, it is fair game for Plaintiff to request all prisoner lawsuits where Defendant was alleged to have retaliated against an inmate in violation of the First Amendment. The motion to compel will be granted as to that narrowed request, dating to the past five years.

<u>Defendant Eaton</u>

<u>Motion #84</u>

Int. #23 requests the location of security cameras. For the same reasons I upheld Defendant Campbell's objection I uphold Eaton's.

RTA #8 and #9 ask Defendant to admit to the authenticity of Plaintiff's exhibits. Defendant correctly declines to admit or deny because he has no knowledge or independent ability to verify.

RTA #10 asks Defendant to admit to the location of a security camera. Defendant properly objected. Apart from irrelevance, revealing this information creates a security concern.

<u>Motion #73</u>

Int. #1 requests specific location information as to inmate McQuitter. However, according to the OTIS report that Defendants have submitted with their response,

McQuitter has been discharged.

Int. # 4-answered.

Int. # 7, #8, #10, and #11. See above discussion regarding Defendant Campbell. These requests are denied.

Int. #19. Defendant will produce information on all prisoner lawsuits for the past five years where Defendant was alleged to have retaliated against an inmate in violation of the First Amendment.

## Defendant Frost

### Motion #84

Int. #14, #15, and #18-answered.

Int. #21 seeks the location of security cameras, information that is not discoverable for the reasons discussed above.

RTA #8, #9, and #10. These are the identical requests made to Defendant Eaton, and will be denied for the reasons stated above.

### Motion #73

Int. #1 ask the address of inmate McQuitter. Mr. McQuitter has been discharged.

Int. #4, #7, #11,and #12 were answered. If the Defendant does not recall, he does not recall.

## Defendant Kindinger

### Motion #84

RTA #8, #9, and #10. The motion is denied as to these requests, for the same

reasons as discussed above regarding identical requests made to Defendants Eaton and Frost.

Motion #73

Int. #1 asks for McQuitters address. He has been discharged.

Int. #7 and #8. Defendant says he does not recall. That is a proper answer.

Int. #14 seeks the names of all prisoners at Gus Harrison acting as unit representatives in Units 4 and 5 since January, 2011. This information is not relevant, and any possible usefulness is outweighed by the burden of producing this information.

## Defendant McConnell

Motion #84

RTA #8, #9, and #10. The motion is denied as to these requests, for the same reasons as discussed above regarding identical requests made to Defendants Eaton, Frost, and Kindinger.

Motion #73

Int. #1 requests McQuitter's address. Mr. McQuitter has been discharged.

Int. #4, #7, and #8. Defendant states that he does not recall. That is a proper answer.

## Requests for Production (all Defendants)

Motion #84

Request #1 seeks video footage from a security camera. Defendants state that no such footage exists.

Request #2 seeks information about the disciplinary hearing record of another inmate. This is irrelevant, and potentially would create a security concern for both the other inmate and the institution.

Request #3 seeks a prison floor plan, including the location of security cameras. As discussed above, that information is not discoverable. Defendants provided an evacuation diagram that is sufficiently responsive to Plaintiff's request.

Request #5 seeks Disobeying a Direct Order misconduct reports issued to Plaintiff from November 2009 to April 2014. Defendants and the MDOC state that these reports were previously provided to Plaintiff when the alleged misconducts occurred. Moreover, as these are non-Defendant MDOC records, it is questionable whether these individual Defendants are the correct persons to ask. Nevertheless, Defendants' counsel has agreed to provide these documents to Plaintiff at the cost of $.10 per page. If Plaintiff wishes to have these documents, he will so inform Plaintiff's counsel, and counsel will obtain and provide them to Plaintiff at the cost of $.10 per page, which may be paid through Plaintiff's prison account.

Request #6 seeks "all documents relating to Plaintiff's parole hearing process in 2013." At best, this information is marginally relevant to the retaliation claims in this case. Moreover, the individual Defendants would not be in a position to obtain this information. Nevertheless, Plaintiff may obtain these documents from the MDOC at a cost of $.10 per page, which may be deducted from his prison account. The MDOC may redact information that would have an adverse impact on the safety and security of the

MDOC.

## III. CONCLUSION

Plaintiff's Motion to Compel [Doc. #73] is GRANTED IN PART AND DENIED IN PART, as follows;

Defendants Campbell and Eaton will provide information regarding all prisoner lawsuits where the were alleged to have retaliated against an inmate in violation of the First Amendment, including the title of the case, the Court, the docket number, and outcome of the case. In all other respects, Motion #73 is DENIED.

Plaintiff's Motion to Compel [Doc. #84] is GRANTED only to the extent that Plaintiff may obtain the requested misconduct reports and parole documents under the terms and at the cost set forth above. In all other respects, Motion #84 is DENIED.

**IT IS SO ORDERED**.

S/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Date: September 30, 2017

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on September 30, 2017, by electronic means and/or ordinary mail.

                                        <u>s/H. Monda in the absence of C. Ciesla</u>
                                        Case Manager