UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT ANNABEL,

    Plaintiff,

v.

JACK FROST, ET AL.,

    Defendants.
_____/

Case No. 14-10244

SENIOR U.S. DISTRICT JUDGE
ARTHUR J. TARNOW

U.S. MAGISTRATE JUDGE
R. STEVEN WHALEN

**ORDER ADOPTING IN PART REPORT AND RECOMMENDATION [232]; SUSTAINING IN PART AND OVERRULING IN PART PLAINTIFF'S OBJECTIONS TO REPORT AND RECOMMENDATION [236]; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [210]; DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [211]**

On January 17, 2014, Plaintiff Robert Annabel filed this 42 U.S.C. § 1983 prisoner civil rights action against Defendants Jack Frost, Steven Kindinger, Sherman Campbell, James Eaton and Keith McConnell. Defendants are all employees of the Michigan Department of Corrections ("MDOC") at Gus Harrison Correctional Facility where Plaintiff is incarcerated. Plaintiff filed his Motion for Summary Judgment [Dkt. # 210] on January 3, 2019. Defendants filed their Motion for Summary Judgment [211] on January 4, 2019. On August 9, 2019, the Magistrate Judge issued a Report and Recommendation ("R&R") [232] recommending that the

Court deny Plaintiff's motion, grant Defendants' motion and dismiss the case. Plaintiff filed Objections [236] to the R&R on August 23, 2019.

For the reasons stated below, the R&R [232] is **ADOPTED in part**; Plaintiff's Objections [236] are **SUSTAINED in part and OVERRULED in part**; Plaintiff's Motion for Summary Judgment [210] is **DENIED** and Defendants' Motion for Summary Judgment [211] is **DENIED**.

## FACTUAL AND PROCEDURAL BACKGROUND

The Court adopts the facts of this case as set forth in the R&R:

**A. Plaintiff's Allegations**

At the time of the alleged incidents giving rise to the complaint, Plaintiff was incarcerated at the Gus Harrison Correctional Facility. *Amended Complaint*, *Docket* #18, filed April 8, 2014. On July 1, 2013, he asked Assistant Resident Unit Manager ("ARUM") Steven Kindinger ("Kindinger") to post a sign-up sheet for inmates seeking to obtain a position as unit representative. Kindinger told him, "I don't want you as block rep." *Id*, ¶ IV-1. Because Kindinger had still not posted a sign-up sheet by July 12, 2013, Plaintiff filed a grievance on July 17, 2013. *Id.* ¶ IV-3. Defendants James Eaton ("Eaton"), Grievance Coordinator and Sherman Campbell ("Campbell"), Deputy Warden rejected the grievance and, Plaintiff alleges, he notified Defendants Kindinger and Jack Frost ("Frost"), a Corrections Officer, that Plaintiff had written a grievance and should be disqualified from a unit representative position. *Id.* ¶ IV-4-5.

On July 22, 2013, Plaintiff opened the tray slot in prisoner McQuitter's cell and delivered a folded t-shirt to McQuitter. *Id.* ¶ IV-8. Defendant Frost then walked toward Plaintiff and said, "You're in trouble, go lock up." *Id.* ¶ IV-9. Frost wrote a Class II misconduct ticket against Plaintiff for disobeying a direct order. *Id.* ¶ 10. Plaintiff alleges that "Frost would not have written a Class II misconduct for disobeying a direct order if Plaintiff hadn't pressed the issue about a unit

representative position with his superiors and then filed a grievance." *Id.* ¶ IV-12.

At the misconduct hearing on August 4, 2013, Plaintiff admitted to opening McQuitter's tray slot, but denied that Frost had ever given him a direct order to not pass items to another prisoner. Plaintiff states that Captain Keith McConnell ("McConnell"), who conducted the hearing, "falsely claimed in a hearings report that Plaintiff admitted disobeying a direct order." *Id.* ¶¶ IV-17-20. He also alleges that in the August 6, 2013 hearings report, McConnell "acknowledged that Plaintiff said the incident could not have occurred at 1620 hrs., as stated on the misconduct report and changed the time to 'approximately 1830 hours'...." *Id.* ¶ IV-20. Following the misconduct report, Plaintiff, who had won election as unit representative, was removed from that position. *Id.* ¶¶ IV-19, 21.

Plaintiff brings the following claims:

(1) That all Defendants retaliated against him, in violation of his First Amendment right to file a grievance and "for his exercise of the right to freedom of speech on behalf of himself and other prisoners."

(2) That Defendant Frost violated substantive due process by issuing a false misconduct charge.

(3) That Defendant McConnell violated procedural due process at the misconduct hearing.

(4) That Defendant Campbell violated due process by upholding McConnell's "false and unsupported findings." *Id.* ¶¶ V -1-4.

Plaintiff requests monetary damages, attorney fees, and costs against all five Defendants. *Id.* ¶¶ VI-a-j.

**B. Procedural History**

On January 22, 2016, the District Court adopted the undersigned's recommendation to dismiss the action in its entirety

under Fed. R. Civ. P. 12(b)(6) and entered judgment in favor of Defendants. *Docket #28, 38, 59-60*. On September 21, 2016, the Sixth Circuit vacated the dismissal of the First Amendment retaliation claim but affirmed the dismissal of the procedural and substantive due process claims. *Annabel v. Frost*, Case No. 15-1518, 4 (6th Cir. Sept. 21, 2016)(unpublished*) Docket #63*. As to the retaliation claims, the Court held that Plaintiff's allegation that the Class II misconduct conviction remained on file, increased classification points, interfered with point reduction, affect parole decisions, and disqualified him from "unit representative positions" sufficiently pled an "adverse action" to "proceed past the pleading stage." *Docket #63*, 4 (*citing Hill v. Hoffner*, 2016 WL 1165405, at *6 (W.D. Mich. March 25, 2016))(issuance of Class II misconduct charge states an "adverse action" for pleading purposes)[1].

As to the requirement of alleging a correlation between the protected conduct and adverse action, the Sixth Circuit noted:

> Annabel alleged that Defendants Eaton and Campbell told Kindinger and Frost that Annabel should be disqualified from a unit representative position because he filed a grievance. He also alleged that Frost wrote a false misconduct ticket for another prisoner who was 'pressing the issue of a unit representative el[e]ction as an intended candidate' in order to disqualify him for the position. These allegations, coupled with the temporal proximity between Annabel's grievance and the misconduct charge [five days], sufficiently stated a plausible First Amendment retaliation claim. *Docket #63,* 5.

**STANDARD OF REVIEW**

The Court's review of objections to a Magistrate Judge's R&R on a dispositive motion is de novo. 28 U.S.C. § 636(b)(1)(c). "'[O]bjections disput[ing]

---

[1] However, the Court observed elsewhere that aside from the termination from the unit representative position, Plaintiff "did not allege any facts concerning the nature of the penalty he received as a result of the [misconduct] charge." *Docket #63* at 6.

the correctness of the magistrate's recommendation but fail[ing] to specify the findings . . . believed in error' are too general." *Novak v. Prison Health Services, Inc.*, No. 13-11065, 2014 WL 988942, at *3 (E.D. Mich. Mar. 13, 2014) (quoting *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995)). Ordinarily, objections that lack specificity do not receive de novo review. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). However, courts construe the objections of pro se litigants liberally. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the Court may accept, reject, or modify any or all of the Magistrate Judge's findings or recommendations. Fed. R. Civ. P. 72(b)(3).

A party is entitled to summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Additionally, where "the parties filed cross-motions for summary judgment, 'the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.'" *McKay v. Federspiel*, 823 F.3d 862, 866 (6th Cir. 2016) (quoting *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991)).

Here, this Court's task is to determine whether there is a genuine issue of material fact in Plaintiff's retaliation claim against Defendants. Plaintiff has the burden of proving 3 elements:

> (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

The first two elements are not in dispute. R&R at 7. However, the causal connection between them is. Recognizing the difficulty of proving an official's retaliatory motive with direct evidence, the Sixth Circuit has stated that circumstantial evidence will suffice. *Hill v. Lappin*, 630 F.3d 468, 475 (6th Cir. 2010). Examples of circumstantial evidence include the timing of events and disparate treatment of similarly situated individuals. *Thaddeus-X v. Blatter*, 175 F.3d at 399. Plaintiff here alleges temporal proximity between his grievance and his misconduct ticket, but "often evidence in addition to temporal proximity cases is required." *Holzemer v. City of Memphis*, 621 F.3d 512, 526 (6th Cir. 2010). "In analyzing the facts in temporal proximity cases, [the Sixth Circuit has] always looked at the totality of the circumstances to determine whether an inference of retaliatory motive can be drawn." *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 401 (6th Cir. 2010).

# ANALYSIS

I. **Report & Recommendation [232]**

   a. Plaintiff's Motion for Summary Judgment

Summary judgment is a case filter. It helps determine which cases should be decided as a matter of law, and which contain factual disputes that require jury submission. Since this case presents two sides to the same story, it fits the latter description. While the Magistrate Judge applied the correct summary judgment standard, he overlooked key aspects of Plaintiff's evidence that show sufficient disagreement between the parties. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). First, Plaintiff's story hinges on whether or not his misconduct ticket for disobeying a direct order was false. If Plaintiff's evidence was limited merely to his word versus Defendant Frost's it would likely be a loser at trial. However, Plaintiff's picture is in a higher definition than the R&R shows. Plaintiff presents 2 sworn affidavits from witnesses of his encounter with Defendant Frost. [Dkt. #152, ex. 8, 9]. Both of their affidavits are consistent with Plaintiff's story— Defendant Frost never gave Plaintiff a direct order. *Id.* Without a direct order to disobey, Plaintiff's misconduct ticket is false. Furthermore, both sides have a curious disagreement about exactly when the encounter took place. Plaintiff and his witnesses say it occurred at 16:30, Defendant say 14:30. [Dkt. #210, pg. 3, 5, 12]. This discrepancy is important, because it changes the window of time during which

the Defendants' preserved and observed the security footage. This discrepancy could also be meaningless, but that is for a jury to decide.

Prisoner Gray's involvement also presents another key aspect to Plaintiff's story. Prisoner Gray, along with Plaintiff, was an unofficial block representative seeking a special election. *Id*. at 35. After Plaintiff was denied the special election, Prisoner Gray was also issued a misconduct ticket that Plaintiff alleges was false. Specifically, Plaintiff alleges that Prisoner Gray, a wheelchair bound inmate, was verbally harassed and provoked into a false misconduct ticket for threatening behavior. *Id*. at 4. If this is true, it would highlight the totality of Plaintiff's circumstances and Defendant's actions as not just adverse against a grievance but retaliation against electing official block representatives that have the privilege of attending warden forums and advocating for the residents of their wing — a privilege that Plaintiff and Prisoner Gray lacked as unofficial representatives. Once again, these facts may turn out to be ultimately unconvincing, but they shed light on exactly what summary judgment motions are meant to reveal—genuine issues of material facts. Therefore, Plaintiff's Motion for Summary Judgment [210] is denied.

    b. Defendants' Motion for Summary Judgment

Both the Magistrate Judge and the Defendants took great strides to argue that Plaintiff has the burden of proving all 3 elements of his claim, but both failed to

mention an equally essential aspect of a retaliation case — the shifting burden. Once Plaintiff proves prima facially that not only did Defendants take adverse action against Plaintiff but that it had a but for causal connection with Plaintiff's protective conduct rendering it retaliatory; the Defendant has the burden of proving reasons for taking adverse action independent of Plaintiff's protective conduct. *Thaddeus-X v. Blatter*, 175 F.3d at 399. In effect, Defendants bear the burden of severing the causal connection.

If they successfully severed this connection, they would be entitled to summary judgment. However, they did not. Instead "defendants have done little more than deny the allegations put forth by plaintiffs[,] [s]uch is not sufficient to meet their burden under Federal Rule of Civil Procedure 56 to show affirmatively that there is no genuine issue in dispute." *Id.* As a result, the Court is presented with two accounts of the same story. One arguing that each piece of evidence is a link in a chain of a retaliation conspiracy. The other arguing that each piece of evidence amounts to a mere coincidence of isolated incidents. This Court cannot render an opinion on this factual dispute. Instead, the law dictates jury submission. Therefore, Defendants' Motion for Summary Judgment [211] is denied.

## II.  PLAINTIFF'S OBJECTIONS [236]

**Objection 1:** "The evidence should have been viewed in a light most favorable to Plaintiff on defendants' motion for summary judgment." [Dkt. #236, pg. 1].

Plaintiff argues that the R&R "wholly accepts defendant's contradicted accounts as truth while ignoring or dismissing contrary evidence." *Id.* at 2. Specifically, Plaintiff notes that the R&R discounted Plaintiff's assertions regarding the false misconduct ticket and the time of the ticket was issued, while embracing Defendants' non-retaliatory reasons for rejecting the grievance. *Id.* In regards to the false misconduct ticket, this Court agrees. The R&R states that "Plaintiff's claim that he did not commit the Class II infraction of disobeying a direct order is contradicted by Frost's testimony that he gave Plaintiff 'several verbal commands to stop' including a direct command." R&R at 19. Here, the Magistrate Judge allowed "mere assertions that the incident described by a prisoner never took place or was misdescribed." Such assertions are "insufficient to show that no genuine issue of material fact exists on a retaliation claim." *Bass v. Robinson*, 167 F. 3d 1041, 1046 (6th. Cir. 1999). Moreover, the Magistrate Judge did not take note of Plaintiff's supporting affidavits that corroborate his claim that Defendant Frost did not give any direct commands. This highlights a failure to look at the evidence of the light most favorable to Plaintiff, therefore, objection 1 is sustained.

**Objection 2:** The Magistrate Judge's conclusion that Plaintiff did not cite Prisoner affidavits on the record is wrong.

The Magistrate Judge casts doubt on Plaintiff's account of his interaction with Defendant Frost that lead to Plaintiff's misconduct ticket. R&R at 20. The Magistrate

Judge states that Plaintiff in his deposition claims that 3 individuals witnessed his account with Defendant Frost but Plaintiff failed to present these witness statements to support his account of the interaction. This is not true. First, Plaintiff's motion for summary judgment did cite to supporting witness affidavits from Prisoners Williams and Philips. [Dkt. #152, ex. 8, 9]. Second, both of their accounts support Plaintiff's allegations. *Id.* They both state that they did not hear Defendant Frost give Plaintiff a direct order not to pass an item to another prisoner. *Id.*

The Magistrate Judge also found that Plaintiff's statements are inconsistent in that Plaintiff both states that Defendant Frost followed him "away from other witnesses" and that 3 prisoners witnessed his interaction with Defendant Frost. These statements are not inconsistent. R&R at 20. Plaintiff only claimed that Defendant Frost followed him away from *other* witnesses – not *all* witnesses. Although the time of their interaction is in dispute, both Plaintiff and Defendant Frost agree that their interaction occurred when most inmates were locked up in their cells, so it is inevitable that there were at least some witnesses. (*See* pg. ID. 2369). Since Plaintiff did in fact provide the affidavits of 2 of the 3 witness, objection 2 is sustained.

**Objection 3**: The Magistrate Judge erred in concluding that prisoner Gray is not similarly situated to plaintiff.

In this case, the Sixth Circuit vacated this Court's 12(b)(6) dismissal of Plaintiff's retaliation claim in part because Plaintiff alleged that Defendant Frost wrote another false misconduct ticket for Prisoner Gray who was also seeking a special election. *Annabel v. Frost,* Case No. 15-1518, 5 (6th Cir. Sept. 21, 2016) (unpublished). However, the R&R dismisses this allegation as providing sufficient circumstantial evidence of a retaliatory motive because neither Prisoner Gray nor Plaintiff on his behalf, grieved the denial of a special election. R&R at 21. The R&R incorrectly infers that Prisoner Gray would need to be able to support his own retaliation claim in order to bolster Plaintiffs. But the Sixth Circuit makes no mention of such a high bar for circumstantial evidence. Here, after asking multiple times for a special election, Defendant Frost accused Prisoner Gray of a Class I ticket which subsequently disqualified him from running for a block representative position. [Dkt. #210, pg. 4]. This fits squarely within the description of supporting circumstantial evidence that lead the Sixth Circuit to uphold Plaintiff's retaliation claim, therefore, objection 3 is sustained.

**Objection 4**: The Magistrate Judge erred in using propensity evidence against Plaintiff.

Plaintiff argues that the 5-day temporal proximity between his grievance and his alleged false misconduct ticket supports his claims of a retaliatory scheme. In response, the Magistrate Judge argues that this inference is diminished by the fact

that Plaintiff is both a "'prolific filer of grievances' and a frequent receiver of misconduct tickets." R&R at 25. He goes on to argue that since Plaintiff averages between 1 and 2 misconduct tickets and grievances every month, the close temporal proximity between the grievance and misconduct ticket in this case is of less and import. *Id.* Plaintiff then incorrectly argues that such evidence of past conduct is inadmissible propensity evidence under Federal Rule of Evidence 404(a). [Dkt. #236, pg. 4-5]. It is not. 404(a) prohibits the admission of past conduct in order to show conformity with that conduct in this instance. However, here the Magistrate Judge is not using Plaintiff's past grievance or misconduct ticket to show any type of conformity. Instead, he highlights frequent grievance and misconduct tickets to show that statistically almost all of Plaintiff's grievances and misconduct tickets are temporally proximate and therefore using temporal proximity for support for Plaintiff's retaliation claim is weakened. For these reasons, objection 4 is overruled.

**Objection 5:** "Even if Kindinger is dismissed, Plaintiff's retaliation claims against other defendants may proceed." [Dkt. #236, pg. 5].

Plaintiff seems to claim that there are multiple factual scenarios that could support his retaliation claim rendering Defendant Kindinger disposable. *Id.* However, this is directly at odds with the rest of Plaintiff's evidence which all point to Defendant Kindinger as the orchestrator of the alleged retaliation scheme and without whom the other Defendants may not have been aware of Plaintiff's

insistence on holding a special election. [Dkt. #210, pg. 1; ex. 1 at 12]. Considering Defendant Kindinger's critical role in Plaintiff's evidence, objection 5 is overruled.

**Objection 6**: "The R&R contradicts itself that Defendant McConnell was grievable." [Dkt. #236, pg. 5].

Under the PLRA, prisoners must exhaust all of their available administrative remedies before filing a §1983. Prison Litigation Reform Act of 1996, 42 U.S.C. §1997e(a). The R&R states that Plaintiff did not exhaust his available remedies in regards to Defendant McConnell's involvement in the alleged retaliation scheme outside of being a hearing officer. R&R at 22. While Plaintiff did appeal Defendant McConnell's misconduct determination, he did not mention Defendant McConnell in either of his grievances before the hearing. [Dkt. #152, ex. 2, 10]. Therefore, since Plaintiff claims that Defendant McConnell is part of the alleged retaliation scheme, but did not grieve Defendant McConnell's role outside of the hearing, that part of Plaintiff's allegations are not exhausted. Objection 6 is overruled.

## Conclusion

For the reasons stated above, the Court **ADOPTS in part the R&R** [232]; **SUSTAINS in part and OVERRULES in part** Plaintiff's Objections [236]; **DENIES** Plaintiff's Motion for Summary Judgment [210]; and **DENIES** Defendants' Motion for Summary Judgment [211].

Accordingly,

**IT IS ORDERED** that the R&R [232] is **ADOPTED in part**.

**IT IS FURTHER ORDERED** that Plaintiff's Objections [236] are **SUSTAINED in part and OVERRULED in part**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment [210] is **DENIED.**

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment [211] is **DENIED**.

**SO ORDERED**.

Dated: September 30, 2019

s/Arthur J. Tarnow
Arthur J. Tarnow
Senior United States District Judge